ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| G. RB GUAYNABO, INC., Recurrida, v. MUNICIPIO AUTÓNOMO DE GUAYNABO, Peticionaria. | TA2026CE00228 | *CERTIORARI* procedente del Tribunal de Primeara Instancia, Sala Superior de Bayamón. Civil núm.: BY2023CV02401. Sobre: desahucio en precario; expropiación forzosa a la inversa. |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 27 de marzo de 2026.

La controversia que atendemos en este recurso inició como una acción de desahucio y un reclamo de expropiación a la inversa, con relación a la propiedad donde ubica el Centro Operacional del Municipio de Guaynabo. En atención a ello, nos corresponde evaluar si el Municipio Autónomo de Guaynabo (Municipio) ejerció o no su derecho a la opción conforme a los términos del contrato de arrendamiento con opción a compra suscrito entre las partes del título y a la Ordenanza Núm. 55, Serie 1995-1996, según aprobada por la Legislatura Municipal de Guaynabo. De igual forma, determinamos a quién corresponde el pagaré y los fondos consignados por la parte interventora en este caso, Banco Popular de Puerto Rico.

Por los fundamentos expuestos a continuación, **expedimos** el auto de *certiorari* y **revocamos** la *Resolución* objeto de este recurso. En consecuencia, **desestimamos la demanda** incoada por la recurrida G. RB Guaynabo, Inc., en contra del Municipio[1].

---

[1] Junto a su contestación a la demanda, el Municipio instó una reconvención. La misma, no es objeto de este recurso, por lo que la controversia en ella planteada sigue viva y deberá ser atendida por el foro primario.

I

El 4 de mayo de 2023, G. RB Guaynabo, Inc. (G. RB), presentó una demanda contra el Municipio, la cual posteriormente enmendó[2]. En lo pertinente, alegó que G. RB era la dueña en pleno dominio de una finca ubicada en el Barrio Mamey de Guaynabo[3], y que el Municipio ostentaba la posesión sin haber ejercido la opción de compra acordada y sin pagar canon de arrendamiento alguno. Por ello, solicitó que se ordenase el desahucio o la expropiación del terreno por parte del Municipio.

Por su parte, y tras varias incidencias procesales[4], el 22 de enero de 2025, el Municipio presentó su contestación a la demanda enmendada junto a una reconvención compulsoria enmendada[5]. Al negar las alegaciones en su contra, sostuvo que, contrario a lo alegado por G. RB, sí había cumplido con las cláusulas del contrato de arrendamiento y opción a compra suscrito entre las partes el 28 de diciembre de 1995. En particular, que había efectuado la totalidad de los pagos requeridos según el contrato, y que, tras el vencimiento del contrato de arrendamiento, ocupaba la propiedad en función de haber ejercido el derecho de opción de compra.

---

[2] *Véase,* apéndice del recuro*,* entrada 1 SUMAC TA. **La demanda, fue enmendada a los fines de incluir una causa de acción para solicitar la devolución del pagaré hipotecario que gravaba la propiedad y la devolución del dinero que estaba depositado en las siguientes cuentas del Banco Popular de Puerto Rico** (BPPR): *Bond Fund Account Núm.* 81-0076-026 - $177,792.52; y, *Debt Service Reserve Account Núm.* 81-0076-034 - $1,948,038.04 *Íd.*, entrada 59 SUMAC. Tanto el instrumento como la referida cantidad fueron consignados por el BPPR en la Unidad de Cuentas del tribunal con los intereses acumulados. *Íd.*, entrada 50 SUMAC TA.

[3] Se trata de la propiedad inscrita a favor de G. RB en el Registro de la Propiedad Inmueble, al folio ciento setenta y cinco (175), del tomo doscientos setenta y uno (271), de Guaynabo; finca dieciséis mil sesenta y cuatro (16,064), Inscripción Primera (1era), con la siguiente descripción:

> **RÚSTICA**: Parcela de terreno ubicada en el Barrio Mamey de Guaynabo, Puerto Rico, marcada con las letras "F", "C" y "D" en el Plano de Inscripción y Lotificación de la finca principal que proceden de éstas, autorizado por la Honorable Junta de Planificación de Puerto Rico, compuesta de dieciocho punto mil cuarenta milésimas (18.1040) cuerdas equivalente a setenta y uno mil ciento cincuenta y cinco punto setenta y ocho metros cuadrados (71,155.78 m.c.); en lindes: por el Norte, con terrenos de don Epifanio Cabello; por el Sur, con un camino público, según escritura de Servidumbre de Paso requerida por la Junta de Planificación; por el Este, con las parcelas "G" y "B" de la finca principal, y por el Oeste, con la Parcela "E" de la finca principal y con terrenos de don Félix Baerga, y una quebrada que la separa de terrenos de don Félix Baerga.

[4] Entre otras incidencias, el Tribunal de Primera Instancia declaró con lugar la solicitud de intervención y consignación del BPPR. Apéndice del recurso, entrada 47 SUMAC TA.

[5] *Íd.*, entrada 75 SUMAC TA.

Ello, en virtud de que se había materializado la condición suspensiva, conforme a lo dispuesto en la escritura de arrendamiento y opción a compra y la ordenanza municipal correspondiente[6].

En ánimo de comprender a cabalidad los sucesos que desembocaron en la presentación de la demanda y en la controversia que atendemos, hacemos un recuento de los hechos que **no están en controversia** y que resultan pertinentes. Veamos.

A partir de la aprobación por la Legislatura Municipal del Municipio de Guaynabo de la Ordenanza Núm. 40, Serie 1994-1995, de 23 de diciembre de 1994, las partes litigantes se involucraron en gestiones destinadas al arrendamiento de la finca propiedad de G. RB, con el fin de construir en ella un Centro Operacional (CO)[7], en el cual el Municipio centralizaría los servicios de obras públicas, control ambiental, transportación, vivienda y servicios escolares.

Culminadas varias gestiones, entre ellas, que G. RB modificase su naturaleza jurídica de una sociedad en comandita a una corporación, la Legislatura Municipal aprobó la Ordenanza Núm. 55, Serie 1995-1996, el 13 de diciembre de 1995 (**Ordenanza 55**), por virtud de la cual derogó la Ordenanza 40, Serie 1994-1995, y autorizó al alcalde, o a la persona designada por este, a comparecer mediante escritura pública y suscribir un nuevo contrato de arrendamiento con opción a compra[8].

A la luz de ese mandato, el 28 de diciembre de 1995, el Municipio y G. RB otorgaron la Escritura Núm. 18, ante la abogada-notaria Cecilia T.

---

[6] Se trata de la Ordenanza Núm. 55, Serie 1995-1996, aprobada por la Legislatura Municipal el **13 de diciembre de 1995**, la cual autorizó al entonces alcalde del Municipio de Guaynabo, o la persona autorizada por este, a comparecer a la escritura pública con relación al arrendamiento objeto de controversia. Apéndice del recurso, entrada 103 SUMAC TA.

[7] *Véase*, hechos incontrovertidos de la *Resolución* objeto de controversia, a las págs. 4-5. Apéndice del recurso, entrada 147 SUMAC TA. En su *Resolución*, el foro primario consignó los hechos incontrovertidos y los que concluyó que aún estaban en controversia. No obstante, **al examinar los supuestos hechos en controversia, a la luz de la prueba documental que obra en autos, concluimos que tales hechos no han sido controvertidos, por lo que no avalamos la determinación del foro primario a esos efectos**.

[8] Destacamos que la Ordenanza 55, en su tercer "Por Cuanto", concluyó que la financiación para el desarrollo del proyecto sería mediante la emisión de bonos en el mercado de bonos exentos de contribución de los EE.UU., pues ello redundaría en una economía en los cánones de arrendamiento que el Municipio se obligaría a pagar a G. RB.

Márquez Díaz, para el arrendamiento y opción a compra de la finca (**Escritura 18**).

Con el fin de financiar la construcción y el arrendamiento del proyecto a ser desarrollado, el 28 de diciembre de 1995, G. RB otorgó la Escritura Núm. 19, sobre hipoteca en garantía de un pagaré al portador, por la suma de $19,090,000.00, con fecha de vencimiento al 1 de julio de 2022. El préstamo garantizado por esa hipoteca fue suscrito a favor de la Autoridad de Puerto Rico para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental (AFICA).

Conforme a la Escritura 18, G. RB arrendaba la propiedad al Municipio con todos sus usos, servidumbres y mejoras, por un término que comenzaría el 1 de enero de 1998, y vencería el 30 de junio de 2022. La Escritura 18 le confería al Municipio, a su discreción, el derecho de ejercer la opción de compra de la propiedad el 1ro de julio de 2022. La compraventa tomaría en consideración los pagos básicos de arrendamiento, los pagos suplementarios de arrendamiento, y un pago adicional y final ascendente a un dólar ($1.00). Además, la Escritura 18 dispuso expresamente que la Ordenanza 55 se hacía formar parte de ella.

Transcurrido el 1 de julio de 2022, el 30 de agosto de 2022, el Ing. José R. Berríos Pagán, en representación de G. RB, se comunicó con el asesor legal del Municipio, Lcdo. Raúl Santiago Pérez, para iniciar los procesos oficiales para otorgar la escritura de compraventa. A partir de entonces, iniciaron una serie de comunicaciones, verbales y escritas, entre las partes litigantes para formalizar la compraventa. No obstante, estas gestiones no rindieron fruto, pues G. RB finalmente sostuvo que la opción había vencido el 1 de julio de 2022, que el Municipio tenía que pagar los cánones adeudados desde esa fecha y que los fondos sobrantes depositados en el BPPR, fiduciario de los fondos por concepto de la emisión de bonos, tenían que ser entregados a G. RB y no al Municipio.

Estas discrepancias entre las partes litigantes culminaron con la presentación de la demanda por parte de G. RB el 4 de mayo de 2023.

Culminado el descubrimiento de prueba, el 20 de agosto de 2025, el Municipio presentó una solicitud de sentencia sumaria parcial[9], en la que solicitó que el tribunal desestimara en su totalidad la demanda enmendada[10] y, por consiguiente, las reclamaciones de desahucio en precario y expropiación forzosa a la inversa presentadas por G. RB. Además, solicitó que se declarara con lugar su reconvención y se dictara sentencia declaratoria de conformidad con lo allí solicitado.

En particular, el Municipio propuso que los asuntos litigiosos a ser dilucidados eran los siguientes: si el acuerdo suscrito entre el Municipio y

---

[9] Apéndice del recurso, entrada 137 SUMAC TA. En apoyo a su moción, el Municipio adjuntó los siguientes documentos: (1) transcripción de la deposición tomada al Ing. José Rafael Berríos Pagán, representante de G. RB; (2) carta fechada el 28 de marzo de 1994, dirigida al entonces alcalde Héctor O´Neill por parte del Ing. José Rafael Berríos Pagán; (3) opinión emitida por el entonces secretario de Justicia, Pedro Pierluissi, dirigida al Lcdo. Hiram E. Cerezo Suárez, Comisionado de la Oficina de Asuntos Municipales; (4) copia de la Ordenanza Núm. 40, Serie 1994-1995; (5) copia de la Escritura Núm. 3 de 8 de abril de 1995, sobre arrendamiento; (6) copia de la Ordenanza Núm. 55, Serie 1995-1996; (7) *Certificate as to Loan Agreement* suscrito entre G. RB y AFICA el 1 de diciembre de 1995; (8) *Certificate as to Trust Agreement* suscrito entre G. RB y AFICA el 1 de diciembre de 1995; (9) copia de la carta fechada el 21 de marzo de 2023, suscrita por el BPPR, dirigida al Municipio; (10) copia de la Escritura Núm. 16 de 28 de diciembre de 1995, cuyo fin era viabilizar que el financiamiento del proyecto pudiera ser aprobado por la AFICA; (11) copia de la Escritura Núm. 18; (12) copia de la transcripción de deposición tomada al Ing. Luis Manuel García Passalacqua; (13) copia de la Escritura Núm. 19 de 28 de diciembre de 1995, sobre garantía de pagaré al portador; (14) copia del *Assigment Agreement* del 28 de diciembre de 1995, mediante el cual G. RB cedía al BPPR todos sus derechos, título e intereses, incluidos los pagos básicos de arrendamiento y otros pagos suplementarios; (15) declaración jurada del Lcdo. Eduardo R. Faría Rodríguez, vicealcalde del Municipio de Guaynabo; (16) capturas de pantalla de ciertos mensajes de texto intercambiados entre el Ing. José R. Berríos Pagán, de G. RB, y el Lcdo. Raúl Santiago Pérez, asesor legal del Municipio, entre el 30 de agosto al 12 de septiembre de 2022; (17) copia de la deposición tomada al Lcdo. Eduardo R. Faría Rodríguez; (8) copia del correo electrónico del Lcdo. Alfredo Fernández Martínez dirigido a los señores Jaime Torréns Banuchi y Eduardo Faría Rodriguez, enviado el 16 de septiembre de 2022; (19) copia del correo electrónico del Lcdo. Alfredo Fernández Martínez a los señores Jaime Torréns Banuchi y Eduardo Faría Rodriguez, enviado el 21 de septiembre de 2022; (20) copia de la carta del 18 de octubre de 2022, dirigida al Ing. José R. Berríos Pagán por parte del Municipio; (21) copia de la carta del 19 de diciembre de 2022, dirigida al Ing. José R. Berríos Pagán por parte del Municipio, a la que se adjuntó un borrador de la escritura de compraventa; (22) copia de la carta del 23 de diciembre de 2022, dirigida al Lcdo. Eduardo R. Faría Rodríguez por el Ing. José R. Berríos Pagán, en que este informaba al Municipio que no aceptaría el ejercicio de la opción hasta que el Municipio pagara los cánones presuntamente adeudados desde julio de 2022; (23) copia de la carta del 17 de enero de 2023, dirigida al Ing. José R. Berríos Pagán por el Lcdo. Eduardo R. Faría en respuesta a la del Ing. Berríos Pagán del 23 de diciembre de 2022; (24) copia de la carta del 30 de enero de 2023, dirigida al señor Jorge Vélez Castillo, vicepresidente y *trust officer* del BPPR *Fiduciary Services*, suscrita por el Lcdo. Faría Rodríguez, en que le solicitaba al primero que el sobrante que estaba depositado en la cuenta del fideicomiso creado en virtud de la emisión de bonos para el financiamiento de la construcción fuera transferido al Municipio; (25) copia de la carta del 22 de marzo de 2023, dirigida al señor Vélez Castillo del BPPR, suscrita por el Ing. José R. Berríos Pagán sobre la improcedencia de la transferencia del sobrante al Municipio; (26) copia de la carta del 23 de marzo de 2023, dirigida al señor Vélez Castillo, suscrita por el Lcdo. Faría Rodríguez.

[10] *Véase*, nota al calce núm. 2, *ante*.

G. RB estaba sujeto a una opción de compra ordinaria; si el acuerdo suscrito entre el Municipio y G. RB estaba sujeto al cumplimiento de varias condiciones; entre ellas, una condición suspensiva; si la condición suspensiva se había configurado; si el Municipio había adquirido el título sobre la propiedad en controversia, de conformidad a lo establecido en la Ordenanza 55 y la Escritura 18; si procedía el desahucio del Municipio de la propiedad; si procedía la expropiación a la inversa reclamada por G. RB y, por consiguiente, el pago de una justa compensación a su favor; si procedía la devolución a G. RB del pagaré hipotecario suscrito como garantía de la deuda; si G. RB estaba obligado a otorgar la escritura de traspaso o compraventa, según requerido por el Municipio; si el sobrante de la cuenta del fideicomiso le correspondía al Municipio o a G. RB; y, finalmente, si procedía la imposición de honorarios de abogado a favor del Municipio[11].

Por su parte, el 18 de septiembre de 2025, G. RB presentó su oposición a la solicitud de sentencia sumaria[12]. Sostuvo que la petición del Municipio no podía prevalecer y reiteró al tribunal que estaba pendiente otra moción dispositiva. A saber, una solicitud de sentencia sumaria presentada por G. RB el 30 de abril de 2025[13].

A su vez, en su escrito de oposición, G. RB sostuvo que los asuntos en controversia eran los siguientes: (1) la procedencia del desahucio, en atención a que el Municipio no había ejercido oportunamente su derecho de opción; (2) la caducidad del derecho de opción de compraventa contenido en el contrato de arrendamiento; (3) la procedencia del reclamo de la expropiación forzosa a la inversa; (4) la cuantificación de la justa compensación por la permanencia del Municipio en la propiedad, luego del vencimiento del contrato de opción y arrendamiento; (5) a quién

---

[11] Apéndice del recurso, entrada 137 de SUMAC TA, a la pág. 4.

[12] *Íd.*, entrada 142 de SUMAC TA. A su escrito, adjuntó la totalidad de las transcripciones de las deposiciones tomadas al Ing. José R. Berríos Pagán, representante de G. RB, y al Ing. Luis Manuel García Passalacqua.

[13] *Íd.*, entrada 103 SUMAC TA.

correspondía el pagaré hipotecario consignado en el tribunal por el BPPR;
(6) a quién correspondían los $2,125,830.56, consignados en el tribunal; y,
(7) la procedencia de una cuantía razonable en concepto de honorarios de
abogado por temeridad[14].

El 10 de diciembre de 2025, el Tribunal de Primera Instancia resolvió
las dos mociones dispositivas mediante dos resoluciones denegatorias. En
la segunda, la cual es objeto de este recurso, el foro primario declaró sin
lugar la *Solicitud de Sentencia Sumaria Parcial* presentada por el
Municipio[15]. El tribunal consignó veinte (20) hechos como incontrovertidos,
y plasmó sesenta y dos (62) hechos y asuntos aún en controversia[16]. En lo
pertinente, calificó como incontrovertidos los siguientes hechos:

.    .    .    .    .    .    .    .

8. Finalmente, en la Sección 2da. de dicha Ordenanza 55, se
dispuso que, "[a]l finalizar el arrendamiento descrito en la
anterior Sección, el Municipio de Guaynabo podrá, si así lo
determina, adquirir a título de dueño todas las facilidades
construidas, así como la finca en la cual enclavan éstas, por
el convenido y ajustado precio de UN DOLAR ($1.00)." A
esos efectos, se añadió lo siguiente en la Sección 3ra de la
Ordenanza 55:

> **Se autoriza y ordena** al Municipio mediante la presente
> **a aceptar el título del Proyecto en el momento en
> que los Bonos hayan sido extinguidos por completo
> y se haya pagado la renta provista en el
> Arrendamiento**, mediante el ejercicio de la opción
> contenida en el Arrendamiento, ello a la terminación de
> dicho Arrendamiento según allí estipulado. **El ejercicio
> de tal opción está sujeto, sin embargo, a la
> existencia de cualquier condición al momento de tal
> ejercicio que pueda legalmente ser utilizada por el
> Municipio como base (sin responsabilidad) para el
> no ejercicio de tal opción**.

9. En la Sección 5ta de la Ordenanza 55, se dispuso lo
siguiente:

> **Se autoriza y ordena** mediante la presente al Hon.
> Alcalde o al Director de Finanzas del **Municipio a hacer
> las solicitudes pertinentes al CRIM para requerirle
> que transfiera directamente al Fiduciario de los
> Bonos o al Banco Popular de Puerto Rico como**

---

[14] *Véase*, apéndice del recurso, entrada 142 SUMAC TA, a la pág. 7.

[15] Entrada 147 SUMAC TA.

[16] En el descargo de nuestra función de revisar *de novo* la determinación del tribunal,
diferimos de su apreciación en cuanto a los hechos que determinó aún estaban en
controversia. De hecho, **todos ellos no están en controversia y están sustentados en
la prueba documental y las deposiciones bajo juramento tomadas a funcionarios del
Municipio y representantes de G. RB**.

**proveedor de la Carta de Crédito, según le indique el Municipio, tales ingresos, por concepto de contribuciones correspondientes al Municipio, que a su vez correspondan en cantidad a los cánones de arrendamiento bajo el Arrendamiento**, ello para que tal Fiduciario los distribuya de conformidad con el Contrato de Fideicomiso y el Contrato de Arrendamiento con Opción a Compra o para que el Banco Popular de Puerto Rico los aplique conforme a la cesión del Arrendamiento.

.     .     .     .     .     .     .     .

12. El mismo 28 de diciembre de 1995, G. RB y **el Municipio otorgaron la Escritura 18, con relación a la Propiedad, la cual se otorgó en atención a la Ordenanza 55**, **haciéndose esta formar parte de la referida Escritura 18**.

13. El párrafo 3.1 de la Escritura 18, dispone en lo pertinente:

The Lessor hereby lets and demises the Project Property unto the Lessee, and the Lessee hereby takes and hires from the Lessor the Project Property with all its uses, easements and improvements, for a term commencing on January one (1), Nineteen Hundred and Ninety-Eight (1988) **if the Lessor shall have delivered to the Lessee the Substantial Completion Certificate and terminating upon earlier of the following**:

**July One (1), Two Thousand Twenty Two (2022) such date as all Basic Lease Payments and Supplemental Lease Payments required hereunder shall have been paid or duly provided for; and such date as all proceeds derived from (i) a foreclosure sale of the last remaining parcel of real property constituting a part of the Project Property under the Mortgage and (ii) the exercise by the Trustee of its remedies as the assignee of secured party under applicable Commonwealth law have been applied by the Trustee to the payment, in whole or in part, of the Bonds.**

.     .     .     .     .     .     .     .

15. Asimismo, dicho párrafo 3.1 de la Escritura 18, dispone en lo pertinente:

On July One (1), Two Thousand Twenty-Two (2022**), at the option of the Lessee and in consideration of the Basic Lease Payments, the Supplemental Lease Payments, and an additional and final payment of One Dollar ($1.00) from the Lessee to the Lessor, all right, title and interest in the Project Property shall be conveyed from the Lessor to the Lessee**[17]**.**

(Énfasis nuestro).

Denegada la moción de reconsideración presentada por el Municipio[18], este presentó el recurso objeto de esta sentencia y formuló el

---

[17] Véase, apéndice del recurso, entrada 147 SUMAC TA, a las págs. 5-7.

[18] *Íd.* apéndice del recurso, entrada 155 SUMAC TA.

siguiente señalamiento de error: "Erró el TPI al denegar la moción en solicitud de sentencia sumaria presentada por el Municipio." (Énfasis omitido).

Por su parte, G. RB presentó su memorando en oposición a la expedición del auto de *certiorari* el 13 de marzo de 2026.

Con el beneficio de la comparecencia de las partes litigantes, resolvemos.

II

A

Distinto al recurso de apelación, el tribunal al que se recurre mediante *certiorari* tiene discreción para atender el asunto planteado, ya sea expidiendo el auto o denegándolo. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011); *García v. Padró*, 165 DPR 324, 334 (2005). Así pues, el *certiorari* es un recurso extraordinario cuya característica se asienta en "la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

Ahora bien, la discreción para entender en el recurso de *certiorari* no se ejerce en el vacío. La Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional; a decir:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, 215 DPR __ (2025).

Cual reiterado, este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción, o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial." *Lluch v. España Service,* 117 DPR 729, 745 (1986).

B

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, regula todo lo concerniente a la sentencia sumaria. Como es sabido, el propósito de este mecanismo procesal es disponer ágilmente de los casos en los que no estén presentes hechos materiales en controversia, que requieran la celebración de un juicio en su fondo. *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 277 (2021).

Para que esta proceda, debe surgir preponderantemente de la prueba que acompaña la sentencia sumaria que no existe controversia sobre hechos medulares del caso. *Íd.* Por tanto, cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una duda que permita concluir la existencia de una controversia real y sustancial sobre los hechos relevantes y pertinentes. *Íd.*

El Tribunal Supremo de Puerto Rico ha definido un hecho material como aquel que, de acuerdo con el derecho aplicable, puede alterar la forma en que se resuelve un caso. *Íd.*, a la pág. 277-278. Véase, además, *Zambrana García v. ELA et al.*, 204 DPR 328, 341 (2020), y *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015). Así pues, "[e]n ausencia de una controversia de hechos materiales, el tribunal dictará sentencia si procede en derecho". *Aponte Valentín et al. v. Pfizer Pharm.,*

208 DPR, a la pág. 278, y *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1024 (2020).

De otra parte, el Tribunal Supremo ha señalado que no es aconsejable dictar sentencia sumaria en casos cuyas controversias versen esencialmente sobre asuntos de credibilidad o involucren aspectos subjetivos, como es la intención, los propósitos mentales o la negligencia. *Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR, a la pág. 278; *Ramos Pérez v. Univisión*, 178 DPR 200, 219 (2010). No obstante, esto no impide la utilización del mecanismo de sentencia sumaria en las reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos que habrán de ser considerados en la solicitud de sentencia sumaria surja que no existe controversia en cuanto a los hechos materiales*. Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR, a la pág. 278*.*

Finalmente, al evaluar la procedencia de una sentencia sumaria, los tribunales revisores nos encontramos en la misma posición que el Tribunal de Primera Instancia. *Íd.*; *Rivera Matos et al. v. Triple-S et al.*, 204 DPR, a la pág. 1025; *Meléndez González et al. v. M. Cuebas*, 193 DPR, a la pág. 115. Si los hechos materiales realmente están incontrovertidos, nos corresponde entonces revisar *de novo* si el foro primario aplicó correctamente el derecho. *Íd.*, a la pág. 119. Por lo tanto, "si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria". *Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR, a la pág. 278-279; *Ramos Pérez v. Univisión*, 178 DPR, a la pág. 214

III

En síntesis, el Municipio arguye que el Tribunal de Primera Instancia sopesó livianamente los documentos que obraban en autos y concluyó, erróneamente, que la interpretación de G. RB sobre los hechos, según presentados en la solicitud de sentencia sumaria, estaban en controversia.

Además, arguye que el contenido de los documentos a los que aludió en su solicitud de sentencia sumaria era claro, y fue expuesto sin

interpretación alguna en su relación de hechos. Insiste en que expuso los hechos tal y cual surgen del documento al que se aludió en apoyo de su solicitud, lo cual exigía que G. RB los admitiera o sometiera un contradocumento, lo cual no hizo. En atención a lo anterior, reiteró que el foro primario incidió al concluir que existían controversias sobre hechos materiales cuando no se presentaron contradocumentos o cuando, como ocurrió, G. RB admitió el hecho y, aun así, el tribunal lo calificó como controvertido.

En cuanto a la controversia de derecho, el Municipio destaca que el negocio jurídico en controversia no es un mero contrato de opción entre dos entes privados. Sino que se trata de un negocio jurídico complejo, cuyo único objetivo era el desarrollo de una instalación municipal, financiada con fondos públicos del Municipio. Señala que este tipo de transacción requirió una serie de procedimientos y regulaciones específicas, que la alejaban de una simple opción.

Arguye que la Legislatura Municipal, mediante la Ordenanza 55, **obligó** al Municipio a aceptar el título del proyecto en el momento en que se acreditara que los bonos emitidos por la AFICA para su construcción se hubieran extinguido por completo y se hubiera pagado la renta provista en el arrendamiento. Resalta que la Ordenanza 55 establecía que la única condición para no cumplir lo ordenado, era la existencia de cualquier condición al momento de tal ejercicio, que pudiera ser utilizada legalmente por el Municipio como base para no ejercerla, aunque ello no ocurrió.

En virtud de lo anterior, plantea que el contrato objeto de controversia no es un contrato de opción de compra ordinario, sino un mandato de la Legislatura Municipal sujeto a una condición suspensiva. Insiste, no solo en que, cumplido el término dispuesto en la Escritura 18, junto con los pagos correspondientes, se satisfizo la condición para el traspaso de la propiedad, sino que además la corporación recurrida reconoció tal interpretación.

Por su parte, y en lo pertinente, G. RB arguye que, si bien la referida Ordenanza 55 fue aprobada por la Legislatura Municipal de Guaynabo, en tanto G. RB no figuró como parte de esa Ordenanza, nada de lo que allí dispuesto le generaba obligación alguna. Además, sostiene que la Ordenanza 55 meramente autorizó al alcalde a suscribir el contrato de arrendamiento con opción a compraventa, y describió el derecho de opción tal y como estaba contenido en la Escritura 18 y, aunque esta fue suscrita con posterioridad a la aprobación de la Ordenanza 55, esta última no modificaba ni alteraba los términos claros establecidos en la Escritura 18. En apoyo de su argumento, señaló que de la Escritura 18 surgía la inexistencia de otras obligaciones o interpretaciones fuera de las contenidas en ella[19].

A su vez, reiteró su postura respecto a que el Municipio ni pagó la prima ni ejercitó su derecho de opción dentro del plazo preestablecido, por lo que el derecho de opción caducó y la acción de desahucio procedía en derecho.

En cuanto al argumento del Municipio sobre las comunicaciones en las que G. RB presuntamente reconoció que se habían satisfecho las condiciones para la consumación de la opción y que, por tanto, estaba impedida de ir contra sus propios actos, G. RB arguyó que dicha premisa se amparaba en evidencia inadmisible, en clara violación a la Regla 408 de Evidencia, 32 LPRA Ap. VI, por tratarse de declaraciones efectuadas durante gestiones dirigidas a transigir[20].

En cuanto al reclamo del sobrante, señaló que la referida cantidad se trataba de un sobrante depositado por G. RB en cuentas bancarias a nombre suyo, y que sirvieron como garantía adicional para el pago a los bonistas, en el supuesto de que no pudiera cumplir con sus obligaciones.

---

[19] En particular, hizo referencia al párrafo 9.9 de la Escritura 18. Apéndice del recurso, entrada 137 SUMAC TA, anejo 11, a la pág. 148.

[20] Esta conclusión no tiene base alguna en el récord. Las comunicaciones verbales y escritas, inclusive las reuniones entre las partes litigantes no reflejan la intención de haber estado destinadas a un posible acuerdo de transacción. Lo que sí reflejan es que las partes litigantes estaban en comunicación para finiquitar la compraventa acordada y la manera de así hacerlo. Ello, hasta que G. RB decidió unilateralmente cobrar cánones adicionales y reclamar el sobrante que obraba en la cuenta del fideicomiso a cargo del BPPR.

Conforme dispone el derecho aplicable, procede dictar sentencia sumaria cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia.

En este caso, el Municipio estableció su derecho con claridad y demostró que no existía una controversia sustancial o real en cuanto a los hechos materiales del caso.

Surge de manera diáfana que, con la aprobación de la Ordenanza 55, la Legislatura Municipal de Guaynabo **ordenó** al ejecutivo municipal a aceptar el título del proyecto en el momento en que los bonos fueran extinguidos por completo, y se hubiera pagado la renta provista en el arrendamiento. Examinada la totalidad del expediente, colegimos que no existe controversia alguna en cuanto a que el Municipio cumplió con los pagos por concepto de arrendamiento y que los bonos emitidos para financiar la construcción del proyecto fueron pagados, por lo que la condición suspensiva contenida en la Ordenanza 55 (que, a su vez, formó parte integral de la Escritura 18) fue cumplida.

Por otro lado, surge claramente que la única exigencia que se dispuso en la Ordenanza 55 para que el Municipio no cumpliera con lo allí pautado fue la existencia de cualquier condición al momento de tal ejercicio, que pudiera ser utilizada legalmente por el Municipio como base (sin incurrir en responsabilidad) para no ejercitar la opción. Esta condición, sin embargo, no ocurrió, por lo que, ante la disposición expresa de la Ordenanza 55, el Municipio quedaba obligado a aceptar el título de la propiedad, el cual se traspasaba al Municipio a partir del 1 de julio de 2022.

Es decir, el Municipio no tenía facultad, a su total arbitrio, de decidir si ejercía o no la opción, pues tenía una orden expresa de ley que disponía que la aceptación quedaba consumada *ex propio vigore* al no existir una condición que legalmente impidiera la transferencia de la titularidad. Coincidimos con la parte peticionaria respecto a que el Municipio no ha

podido emitir el pago final de $1.00, pues, aunque inicialmente G. RB inició las gestiones para otorgar la escritura de compraventa, luego, se ha negado a otorgar la escritura hasta tanto se le paguen cánones de arrendamiento adicionales y se le entregue el sobrante, que fuese consignado en el tribunal por el fiduciario BPPR.

Además, surge de los documentos presentados con la solicitud de sentencia sumaria del Municipio que, después de terminado el arrendamiento para el que disponía la Escritura 18, y sin ninguna objeción al respecto, G. RB reconoció que se habían cumplido las condiciones requeridas para la consumación de la opción y el traspaso de la propiedad, restando únicamente la necesidad de formalizar el mismo. Ello se desprende tanto de la correspondencia remitida al Municipio, como de los mensajes intercambiados entre el presidente de G. RB y el asesor legal del Municipio.

El argumento de G. RB respecto a que, por no ser parte de la Ordenanza 55 no le eran aplicables los términos allí dispuestos, no puede prevalecer. Las normas sobre contratación gubernamental difieren de aquellas que rigen la contratación entre entes privados en aspectos fundamentales. Ello, en atención al imperativo constitucional de que el Estado está obligado a manejar los fondos públicos con el mayor celo, amparado en los más altos principios éticos y fiduciarios[21].

En ese sentido, no podemos obviar que, cónsono con lo aprobado en, y ordenado por, la Ordenanza 55, el 28 de diciembre de 1995, G. RB y el Municipio otorgaron la Escritura 18, mediante la cual formalizaron la transacción objeto de este litigio; inclusive, los términos de la Ordenanza 55, formaron parte de la Escritura 18. Es decir, no cabe duda de que la Escritura 18 estaba **supeditada y condicionada** a la Ordenanza 55.

Concluimos que, establecido ello, los demás hechos objeto de la *Resolución* impugnada resultan inmateriales a la controversia que hoy atendemos.

---

[21] *Jaap Corp. v. Depto. Estado et al.,* 187 DPR 730, 739 (2013).

Cónsono con lo anterior, resaltamos que no cabe hablar de la procedencia o no de la expropiación forzosa a la inversa o del desahucio. Conforme a los hechos discutidos, a partir del 1 de julio de 2022, el Municipio no ocupa la propiedad como arrendatario, sino que advino dueño de la propiedad. Por tanto, no procede el pago de canon alguno por concepto de renta y mucho menos una justa compensación. Lo único que resta es formalizar el contrato de traspaso de la propiedad para ser debidamente inscrito en el Registro de la Propiedad Inmueble a favor del Municipio.

En cuanto a los fondos consignados por el BPPR en el Tribunal de Primera Instancia, concluimos que no cabe duda de que los fondos con los que se financió el desarrollo del Centro Operacional son fondos públicos. De entrada, los pagos para cubrir los costos relacionados con la construcción del CO del Municipio de Guaynabo fueron financiados mediante la emisión de bonos de la AFICA, los cuales, a su vez, fueron repagados principalmente mediante los cánones de arrendamiento que, como ya se estableció, efectuó el Municipio hasta el vencimiento del contrato de arrendamiento. Los referidos pagos fueron transferidos directamente al fiduciario BPPR, quien expidió la carta de crédito[22], con el fin de que fueran distribuidos de conformidad con el *Trust Agreement*[23] y la Escritura 18.

En atención a ello, y al no existir controversia de hechos materiales, como cuestión de derecho, el sobrante consignado en el foro primario

---

[22] Reiteramos que el BPPR actuó como fiduciario, a base del *Trust Agreement* otorgado el 1 de diciembre de 1995, y el cual rigió la manera en que se manejarían los fondos producto de los bonos emitidos por la AFICA.

[23] Además, llamamos la atención a que la Sección 509 del *Trust Agreement* establecía cómo se debía atender el sobrante de los fondos; en particular, dispuso que:

> After provisions shall be made for the payment of all Outstanding Bond issued under this Trust Agreement, including the interest thereon, for payment of all other obligations, expenses and charges required by the Agreement, and for the payment of all amounts payable to the Bank pursuant to the Reimbursement Agreement and the documents relating thereto **the Trustee shall pay, as an overpayment of the total required payment under the Lease Agreement, all amounts in any fund or account then held by it under this Trust Agreement to the Municipality.**

*Véase*, apéndice del recurso, entrada 137 SUMAC TA, anejo 8. (Énfasis nuestro).

constituye fondos públicos, por lo que ordenamos su desembolso a favor del Municipio.

IV

Por los fundamentos expuestos, **expedimos** el auto de *certiorari* y **revocamos** la *Resolución* objeto de este recurso. En su consecuencia, **desestimamos con perjuicio la demanda** incoada por G. RB Guaynabo, Inc., en contra del Municipio Autónomo de Guaynabo. En cuanto a la solicitud para la imposición de honorarios de abogado a favor del Municipio, nada disponemos. En su momento, y atendidas las restantes controversias pendientes de adjudicación, el Tribunal de Primera Instancia hará las determinaciones a esos efectos que correspondan.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones